IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-628

Filed: 2 May 2017

Wilkes County, No. 15 CVS 1042

US CHEMICAL STORAGE, LLC, Plaintiff

v.

BERTO CONSTRUCTION, INC., Defendant

Appeal by defendant from order entered 26 January 2016 by Judge Lindsay R. Davis, Jr., in Wilkes County Superior Court. Heard in the Court of Appeals 11 January 2017.

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson and Jay Vannoy, for plaintiff-appellee.*

*Blanco Tackabery & Matamoros, P.A., by James E. Vaughan and M. Rachael Dimont, for defendant-appellant.*

CALABRIA, Judge.

Where a forum selection clause, pursuant to New Jersey law, was valid, mandatory, and enforceable, the trial court erred in denying defendant's motion to dismiss. Where defendant's contacts with the State of North Carolina were insufficient to create personal jurisdiction, the trial court erred in denying defendant's motion to dismiss. We vacate and remand.

I. Factual and Procedural Background

Berto Construction, Inc. ("Berto") is a New Jersey corporation with its principal and only place of business located in Rahway, New Jersey. Berto performs concrete

construction in the New Jersey-New York-Pennsylvania tristate area. As part of its business, Berto entered into a contract (the "Contract") with the Port Authority of New York and New Jersey (the "Port Authority") to perform construction. In connection with the Contract, the Port Authority required Berto to furnish and install hazmat and supply storage buildings. The Contract limited the suppliers for this project to one of five manufacturers, one of whom was US Chemical Storage, LLC ("US Chemical"). US Chemical is a North Carolina limited liability company. Berto chose US Chemical as its subcontractor, and the two entered into a subcontract agreement (the "Subcontract").

On 9 September 2015, US Chemical filed a complaint against Berto, alleging breach of contract. Specifically, US Chemical alleged that Berto had agreed to pay US Chemical $736,400.00, that US Chemical complied with its obligation under the Subcontract, and that Berto failed to pay an overdue balance of $199,344.25. In response to the complaint, Berto filed a motion to dismiss, pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure, alleging that the court lacked personal jurisdiction over Berto. In an affidavit in support of the motion, Douglas R. Birdsall ("Birdsall"), a project manager for Berto, alleged that Berto had had no contact with the State of North Carolina prior to its contract with US Chemical; that the Contract was explicitly subject to the jurisdiction and laws of New York and New Jersey; and that in the Subcontract US Chemical agreed to be bound by the terms of the Contract,

including a specific provision providing that the Subcontract was subject to New Jersey law. Birdsall further averred that US Chemical had failed to satisfactorily perform its work; that its submissions pertaining to the buildings required multiple revisions; that it supplied incorrect piping on three buildings; that it delivered a building to the wrong location; that it failed to provide certain pieces of equipment; that its defective submissions caused delay to the project; and that all of these defects and delays resulted in $180,933.80 in increased costs to Berto, and the possibility of Berto being assessed for liquidated damages by the Port Authority. Additional arguments, both on the forum selection provision and Berto's minimum contacts, were presented at a hearing on Berto's motion to dismiss.

On 26 January 2016, the trial court entered an order on Berto's motion to dismiss. The trial court found that the Subcontract "provided that it would be governed by New Jersey law and that the plaintiff would be bound to the defendant by the terms of the defendant's contract with the Port Authority[;]" and that the Contract "provided that the defendant agreed to 'irrevocably submit[ ] [it]self to the jurisdiction of the Courts of the State of New York and to the jurisdiction of the Courts of the State of New Jersey in regard to any controversy' arising out of the project." The trial court then noted that the Subcontract "did not provide, however, that the parties selected these courts as the exclusive jurisdictions for any disputes arising out of the project[,]" and concluded that US Chemical's suit "is not barred by the

US Chem. Storage, LLC v. Berto Constr., Inc.

*Opinion of the Court*

parties' subcontract, because the forum selection clause is permissive, not mandatory[.]" With respect to minimum contacts, the trial court noted that

> North Carolina extends the jurisdiction of its courts to actions arising out of "services actually performed . . . for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant"; and actions relating to "goods . . . or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." N.C. Gen. Stat. § 1-75.4(5)(b), (d).

The trial court found that, with Berto's knowledge, US Chemical "designed and constructed twelve hazmat and supply storage buildings at its plant in North Carolina[;]" and that "[t]he buildings were shipped from the plaintiff's facility in North Carolina to the defendant[.]" The trial court therefore concluded that the action arose "out of services actually performed by the plaintiff within North Carolina for the defendant," and that it "relates to goods and things of value shipped from North Carolina by the plaintiff to the defendant on its order or direction," and thus that "personal jurisdiction is extended by N.C. Gen. Stat. § 1-75.4(5)(b) & (d)." The trial court concluded that the Contract and Subcontract did not grant exclusive jurisdiction to New York or New Jersey, that Berto purposefully availed itself of the privilege of doing business in North Carolina, and that its contacts were sufficient to establish personal jurisdiction. It therefore denied Berto's motion to dismiss.

Berto appeals.

## II. Interlocutory Appeal

As a preliminary matter, we note that this is an interlocutory appeal.

> "The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant." *Carl v. State,* 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008). "The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature." *Hamilton v. Mortgage Information Services,* 212 N.C. App. 73, 77, 711 S.E.2d 185, 189 (2011) (citing *Jeffreys v. Raleigh Oaks Joint Venture,* 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994)). Thus, the extent to which an appellant is entitled to immediate interlocutory review of the merits of his or her claims depends upon his or her establishing that the trial court's order deprives the appellant of a right that will be jeopardized absent review prior to final judgment. *Id.; see also Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc.,* 206 N.C. App. 152, 157, 697 S.E.2d 439, 444 (2010).

*Richmond Cty. Bd. of Educ. v. Cowell*, 225 N.C. App. 583, 585, 739 S.E.2d 566, 568 (2013). Thus, in order for us to hear Berto's appeal, Berto must establish the existence of a substantial right.

Berto correctly argues that the validity of a forum selection clause constitutes a substantial right. *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 776, 501 S.E.2d 353, 355 (1998) (holding that the trial court's denial of a defendant's motion to dismiss based on a forum selection clause was appealable). Similarly, Berto correctly argues that N.C. Gen. Stat. § 1-277(b) guarantees the right to immediately appeal an adverse ruling with respect to the jurisdiction of the court over a person or property based upon minimum contacts. *See Credit Union Auto Buying Servs., Inc. v. Burkshire*

*Props. Grp. Corp.*, ___ N.C. App. ___, ___, 776 S.E.2d 737, 739 (2015) (holding that N.C. Gen. Stat. § 1-277(b) guarantees a right to immediate appeal that is limited to minimum contacts questions, the subject matter of Rule 12(b)(2)). We hold that Berto has demonstrated the existence of a substantial right that would be jeopardized absent review, and consider Berto's interlocutory appeal.

### III. Standard of Review

> "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec., LLC v. Evergreen Int'l Aviation, Inc.,* 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).
>
> . . .
>
> "[I]f the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations [in the complaint] can no longer be taken as true or controlling and plaintiff[ ] cannot rest on the allegations of the complaint." *Id.* (second and third alterations in original) (internal quotation marks omitted).

*Parker v. Town of Erwin*, ___ N.C. App. ___, ___, 776 S.E.2d 710, 720-21 (2015).

### IV. Analysis

In two separate arguments, Berto contends that the trial court erred in denying its motion to dismiss. We agree.

### A. Forum Selection Clause

First, Berto contends that the trial court erred in denying its motion to dismiss based upon the purported forum selection clause. A trial court's interpretation of a

forum selection clause is an issue of law that is reviewed *de novo*. *Sony Ericsson Mobile Commc'ns USA, Inc. v. Agere Sys., Inc.*, 195 N.C. App. 577, 579, 672 S.E.2d 763, 765 (2009).

Berto contends that the language of the Contract and the Subcontract clearly and explicitly bound US Chemical to litigate exclusively in the courts of New York or New Jersey. The Contract, parts of which are included in the record on appeal, contains the following provision:

> The Contractor hereby irrevocably submits himself to the jurisdiction of the Courts of the State of New York and to the jurisdiction of the Courts of the State of New Jersey in regard to any controversy arising out of connected with, or in any way concerning the Proposal or this Contract.

This provision was purportedly integrated into the Subcontract by the following language:

> The Subcontractor/Supplier agrees to be bound to the Contractor by the terms and conditions of the Contractor's agreement with the Owner, a copy of said agreement being available for inspection at the office of the Contractor.

The Subcontract further stated that "[t]his contract shall be governed by the laws of the State of New Jersey."

The trial court entered findings consistent with all of these facts, but found nonetheless that "[t]he subcontract did not provide, however, that the parties selected these courts as the exclusive jurisdictions for any dispute arising out of the project."

US Chem. Storage, LLC v. Berto Constr., Inc.

*Opinion of the Court*

The trial court therefore concluded that this language did not bar suit by US Chemical, "because the forum selection clause is permissive, not mandatory[.]"

There is no question that, under the Subcontract, US Chemical agreed that the Subcontract would be "governed by the laws of the State of New Jersey." Further, under New Jersey law, language in an agreement providing that the parties "irrevocably consent[] and submit[] to the jurisdiction of the courts of the State of New Jersey" constitutes an enforceable forum selection clause. *See Hendry v. Hendry*, 339 N.J. Super. 326, 334, 771 A.2d 701, 706 (N.J.Super.A.D. 2001). Additionally, New Jersey courts have allowed a contractual provision to include a forum selection clause by reference. For example, in *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, 2015 WL 167378 (D.N.J. 2015), the plaintiff, Asphalt Paving Systems, entered into a contract with the defendant, General Combustion. The contract provided that it was subject to the standard terms and conditions of third party Gencor. Those terms included a forum selection clause vesting exclusive jurisdiction in Orange County, Florida. *Id*. at *2. The United States District Court, applying the laws of New Jersey, concluded that the forum selection clause was "valid, mandatory, and enforceable." *Id*. at *5.

The Contract, as interpreted pursuant to New Jersey law, clearly contains a mandatory forum selection clause, vesting exclusive jurisdiction in New York and New Jersey, not North Carolina. The Subcontract, as interpreted pursuant to New

Jersey law, clearly integrates that mandatory forum selection clause by reference. As such, the trial court erred in concluding that the forum selection clause was not binding upon US Chemical, and in denying Berto's motion to dismiss.

## B. Minimum Contacts

Second, Berto contends that the trial court erred in denying its motion to dismiss based upon the trial court's lack of jurisdiction. Specifically, Berto contends that it lacked the minimum contacts necessary for the court to establish jurisdiction.

> "The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Replacements, Ltd. v. MidweSterling,* 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999). " 'Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.' " *Nat'l Util. Review, LLC v. Care Ctrs., Inc.,* 200 N.C. App. 301, 303, 683 S.E.2d 460, 463 (2009) (quoting *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). We review *de novo* the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over defendant. *Id.*

*Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011).

Berto contends that, in rendering its findings of fact with respect to minimum contacts, the trial court failed to consider a number of undisputed facts. However, our standard of review is not whether the trial court made certain findings, but rather whether the findings it *did* make were supported by competent evidence in the record. Notably, the only finding of fact with which Berto takes issue is the trial court's

finding that Berto knew that US Chemical, a North Carolina company, would construct its buildings in North Carolina. Upon review of the record, we agree.

There is evidence in the record that Berto, on this single occasion, entered into a contract with a North Carolina company. There is no evidence, however, that Berto knew that the product it purchased would be manufactured in North Carolina. Neither Birdsall's affidavit nor the testimony elicited at the hearing on Berto's motion to dismiss supports a determination that Berto knew that the product it was purchasing would be manufactured in North Carolina.

As the trial court observed in its order, our Supreme Court has addressed a substantially similar matter. In *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 348 S.E.2d 782 (1986), the plaintiff, a North Carolina clothing manufacturer, sued the defendant, a clothing distributor incorporated in New Jersey and doing business in New York. The defendant moved to dismiss based upon, *inter alia*, lack of personal jurisdiction, and when this motion was denied, the defendant appealed. On appeal, our Supreme Court held that the defendant's interactions with the plaintiff created minimal contacts, observing:

> Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State. In the instant case, the defendant made an offer to plaintiff whom defendant knew to be located in North Carolina. Plaintiff

accepted the offer in North Carolina. The contract was therefore made in North Carolina, as we discussed earlier. The contract was for specially manufactured goods, shirts in this case, for which plaintiff was to be paid over $44,000. Defendant was told that the shirts would be cut in North Carolina, and defendant also agreed to send its personal labels to plaintiff in North Carolina for plaintiff to attach to the shirts. Defendant was thus aware that the contract was going to be substantially performed in this State. The shirts were in fact manufactured in and shipped from this State. After defendant contacted the plaintiff to complain about the shirts, defendant then returned them to this State. We therefore conclude that the contract between defendant and plaintiff had a "substantial connection" with this State. We further conclude that by making an offer to the North Carolina plaintiff to enter a contract made in this State and having a substantial connection with it, defendant purposefully availed itself of the protection and benefits of our laws.

*Id.* at 367, 348 S.E.2d at 786-87 (citations omitted).

Notwithstanding the similarities between the two cases, the instant case is distinguishable from *Tom Togs* in one very specific way: The defendant in *Tom Togs* "was told that the shirts would be cut in North Carolina, and defendant also agreed to send its personal labels to plaintiff in North Carolina for plaintiff to attach to the shirts. Defendant was thus aware that the contract was going to be substantially performed in this State." *Id.* at 367, 348 S.E.2d at 787. In the instant case, however, there was no such evidence in the record. The only evidence of contact was the fact that Berto knowingly contracted with a North Carolina company. Any other finding that Berto had contacts with this State is an inference unsupported by the evidence.

To establish minimum contacts with the forum state, the "relationship between the defendant and the forum must be such that he should reasonably anticipate being haled into court there." *Id*. at 365-66, 348 S.E.2d at 786 (citation and quotation marks omitted). The mere fact that a defendant has contracted with a North Carolina company one single time is insufficient to create in the defendant a reasonable anticipation. We therefore hold that Berto did not have sufficient minimum contacts with the State of North Carolina to subject it to personal jurisdiction here. The trial court erred in denying Berto's motion to dismiss.

## V. Conclusion

The Subcontract, by its terms, was properly governed by New Jersey law. Pursuant to New Jersey law, the forum selection provision of the Contract was properly integrated into the Subcontract, and was valid, mandatory, and enforceable between Berto and US Chemical. Additionally, there was insufficient evidence in the pleadings and produced at the hearing to demonstrate that Berto had minimum contacts with the State of North Carolina necessary to support personal jurisdiction. For both reasons, the trial court erred in denying Berto's motion to dismiss. The trial court's order denying Berto's motion is vacated, and this matter is remanded to the trial court.

VACATED AND REMANDED.

Judge McCULLOUGH concurs.

Judge INMAN concurs in part and dissents in part in a separate opinion.

Judge Douglas McCullough concurred in this opinion prior to 24 April 2017.

INMAN, Judge, concurring in part and dissenting in part.

I concur with the majority's holding that New Jersey law governs the enforceability of the Subcontract between US Chemical and Berto, including the forum selection clause incorporated by reference in the Subcontract, so that US Chemical is prohibited from bringing its suit against Berto in North Carolina. However, I write separately to explain why New Jersey law applies, because its application to determine the validity of the forum selection clause is not dictated by the choice of law provision in the Subcontract. I dissent in part because I disagree with the majority's holding that Berto has not made sufficient minimum contacts with North Carolina to subject it to the jurisdiction of our courts.

## I. Forum Selection Clause

We apply *de novo* review to the trial court's interpretation of a forum selection clause. *Sony Ericsson Mobile Commc'ns. USA, Inc. v. Agere Sys.*, 195 N.C. App. 577, 579, 672 S.E.2d 763, 765 (2009) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (internal quotation marks and citations omitted).

N.C. Gen. Stat. § 22B-3 provides, in pertinent part, that "any provision in a contract entered into in North Carolina that requires the prosecution of any action . . . to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen. Stat. § 22B-3 (2015). Accordingly, if the Subcontract between US Chemical and Berto was made in North Carolina, the forum selection

US Chem. Storage, LLC v. Berto Const., Inc.

*INMAN, J., dissenting*

clause in the contract would be void and unenforceable.  On the other hand, if the Subcontract was made outside North Carolina, the statutory bar would not apply.

"The general principle recognized in all jurisdictions is that ordinarily the execution, interpretation and validity of a contract is to be determined by the law of the State or county in which it is made." *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 516, 157 S.E. 860, 863 (1931).  In *Bundy*, the defendant, a Maryland company, appealed from a jury verdict awarding the receiver of an insolvent North Carolina company compensation for interest charged and paid in violation of North Carolina's usury laws.  *Id.* at 513-14, 157 S.E. at 861-62.  The defendant argued that because the contract was entered into in Maryland, where the interest charged was lawful, the trial court applied the wrong law.  *Id.* at 515-16, 157 S.E. at 862.  The North Carolina Supreme Court, citing testimony presented before the trial court that the last signature on the contract was made in Baltimore, held that "it is clear that the contract was executed in Baltimore, Maryland, because the last act essential to the completion of the agreement was performed at that place." *Id.* at 515, 157 S.E. at 862. The Supreme Court further explained that

> the test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of the minds.  Until this act was done there was no contract, and upon its being done at a given place, the contract became existent at the place where the act was done.

*Id.* (internal quotation marks and citation omitted).

Although *Bundy* pre-dated N.C. Gen. Stat. § 22B-3, its reasoning has been followed in modern decisions interpreting forum selection clauses. In *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 187-88, 606 S.E.2d 728, 733 (2005), this Court upheld a Florida forum selection clause because the franchise agreement at issue was last signed by the defendant in Florida. "Just as in *Bundy*, the last act of signing the contract was an essential element to formation. As the contract was formed in Florida, N.C. Gen. Stat. § 22B-3 does not apply to the forum selection clause in the instant agreement." *Id.* at 187, 606 S.E.2d at 733.

Here, the trial court did not make a factual finding of where the contract was made, and the Subcontract does not indicate where it was signed. It appears on the face of the Subcontract that it was signed first by a representative of US Chemical on 1 October 2012 and last by a representative of Berto on 9 October 2012. Berto argues on appeal that because US Chemical's representative admitted in testimony before the trial court that no one from Berto ever came to North Carolina in connection with the Subcontract, this Court should determine on appellate review that the Subcontract was signed last outside of North Carolina. Ordinarily the issue of where a specific action—such as the signing of a document—occurred would seem to be factual and beyond the scope of review of this Court. However, in light of the holding in *Bundy*, which was explicitly based upon trial testimony, and the holding of *Szymczyk*, which followed *Bundy* and did not cite any factual finding by the trial court

on this issue, I find Berto's argument compelling in the absence of any contrary evidence offered by US Chemical.

## II. Minimum Contacts

Because I concur with the majority's holding that the forum selection clause incorporated by reference in the Subcontract precludes US Chemical from bringing suit alleging breach of the Subcontract against Berto in North Carolina, I believe it is unnecessary for this Court to reach the issue of personal jurisdiction. However, because the majority reaches that issue and holds that Berto had not made minimum contacts with North Carolina to subject it to the jurisdiction of our courts, I respectfully dissent.

I would hold that Berto made sufficient minimum contacts with North Carolina to subject itself to the jurisdiction of our courts because Berto initiated contact with a North Carolina manufacturer and entered into an agreement for the North Carolina manufacturer to design and construct storage buildings and ship them from North Carolina to New York.

The trial court's finding that Berto's project manager contacted US Chemical in North Carolina to propose the Subcontract is undisputed and binding on appeal. Berto's trial counsel admitted in argument to the trial court that "Berto researched the different potential subcontractors" approved by the Port Authority and then contacted US Chemical. US Chemical's representative testified before the trial court

4

that at all relevant times, US Chemical has had only one manufacturing facility, in Wilkesboro, North Carolina. Because the most basic research of any manufacturing company to perform the Subcontract would include at least a cursory assessment of the manufacturing facility—*i.e.*, where the manufacturer would perform the vast majority of its contractual duties—the evidence presented to the trial court was competent and sufficient to support the trial court's finding that "[w]ith the defendant's knowledge, the plaintiff designed and constructed twelve hazmat and supply storage buildings at its plant in North Carolina pursuant to the subcontract."

Additional evidence before the trial court revealed that very little of the work performed pursuant to the Subcontract occurred outside of North Carolina. US Chemical's contractual duties did not include off-loading the shipment of storage buildings or installing the storage buildings. The only service performed by US Chemical on site at the Port Authority was to adjust shelving inside the buildings. Because I agree with the trial court's conclusion that the action arises out of services actually performed by US Chemical within North Carolina for Berto, and relates to goods and things of value shipped from North Carolina by US Chemical to Berto on Berto's order or direction, I would hold that Berto is subject to personal jurisdiction based on North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(5)(b) & (d) (2015). I also agree with the trial court's conclusion that Berto purposefully availed itself of the privilege of doing business in North Carolina and that its contacts with

North Carolina were sufficient to satisfy the due process requirement of the United States Constitution.