IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-422

Filed 20 June 2023

Johnston County, No. 21-CVS-568

THOMAS JARMAN and JESSICA VAUGHN, individually and as administrators of
the ESTATE OF GRESSY THOMAS JARMAN, Plaintiffs,

v.

TWIDDY AND COMPANY OF DUCK, INC., ROGER STRICKER and PATRICIA
STRICKER, Defendants and Third-Party Plaintiffs,

v.

GEORGIA MAY, Third-Party Defendant.


Appeal by Defendant/Third-Party Plaintiff Twiddy and Company of Duck, Inc.

from Order entered 15 December 2021 by Judge John W. Smith in Johnston County

Superior Court.  Heard in the Court of Appeals 16 November 2022.

*Fox Rothschild LLP, by Matthew Nis Leerberg, Henson Fuerst, PA, by Carma
L. Henson, and Silverman Thompson Slutkin & White, by Andrew George
Slutkin and Ethan Shale Nochumowitz admitted pro hac vice, for Plaintiffs-
Appellees Thomas Jarman and Jessica Vaughn.*

*Poyner Spruill LLP, by Dylan J. Castellino and Timothy W. Wilson, for
Defendant/Third-Party Plaintiff-Appellant Twiddy and Company of Duck,
Inc.*

HAMPSON, Judge.


**Factual and Procedural Background**

Twiddy and Company of Duck, Inc. (Twiddy) appeals from an Order entered 15 December 2021 denying its Motion to Change Venue of an action brought by Thomas Jarman and Jessica Vaughn, individually and as administrators of the Estate of Gressy Thomas Jarman (Plaintiffs). The Record before us tends to reflect the following:

On 3 June 2019, Plaintiffs' minor child died after drowning in a pool at a vacation home in Corolla, North Carolina owned by Roger and Patricia Stricker (the Strickers).[1] At the time, the vacation home was rented by Georgia May (May)[2] under a Vacation Rental Agreement with Twiddy, a realty company located in Duck, North Carolina that served as the agent for the Strickers. Plaintiffs were not parties to the Vacation Rental Agreement but were staying at the vacation home with May and other family members.

Relevant to this case, the Vacation Rental Agreement between Twiddy and May provided:

> Twiddy . . . is the Agent for a VACATION HOME . . . . The owner . . . has given Agent the authority to enter into this Agreement . . . . This Agreement sets forth the terms under which You will lease the Premises through the Agent.
>
>  . . . .
>
> **1.** THIS IS A VACATION RENTAL AGREEMENT UNDER THE NORTH CAROLINA VACATION RENTAL ACT . . . .

---

[1] The Strickers are residents of Pennsylvania.

[2] May is the grandmother of the minor child and a resident of Maryland.

**2.** Agent, as agent of the Owner, hereby rents to You and You hereby rent from the Agent, the Premises in accordance with the terms and conditions contained in this Agreement . . . .

. . . .

**4. Use and Tenant Duties.** The use of the Premises is restricted to use by You and Your family . . . . The term "family" as used herein means parents, grandparents, children and extended family members vacationing at the Premises.

. . . .

**17. Indemnification and Hold Harmless.** You agree to indemnify and save harmless the Owner and Agent from any liabilities . . . arising from or related to any claim or litigation which may arise out of or in connection with Your use and occupancy of the Premises including but not limited to any claim or liability. . . which is caused, made, incurred or sustained by You as a result of any cause, unless caused by the grossly negligent or willful act of Agent or the Owner, or the failure of Agent or the Owner to comply with the Vacation Rental Act. . . . The terms "Tenant," "You," and "Your" as used in this Agreement shall include Tenant's heirs, successors, assigns, guests, invitees, representatives and other persons on the Premises during Your occupancy (without regard to whether such persons have authority under this Agreement to be upon the Premises), where the context requires or permits.

. . . .

**21. Disputes:** This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina, and shall be treated as though it were executed in the County of Dare, State of North Carolina. Any action relating to this Agreement shall be instituted

and prosecuted only in the Dare County Superior Court, North Carolina. You specifically consent to such jurisdiction and to extraterritorial service of process. You shall be responsible for all legal fees and court costs incurred by Agent and Owner in the enforcement of their rights or Your obligations under this Agreement.

**22. Miscellaneous:** You agree and have verified that for purposes of this vacation rental agreement that Your confirmation number shall serve as Your electronic signature and to be bound by same and in the same manner as if You had otherwise ordinarily executed the document. . . . Each section, subsection or paragraph of this Agreement shall be deemed severable . . . .

May electronically signed each individual paragraph of the Vacation Rental Agreement.

On 18 February 2021, Plaintiffs filed a Complaint against Twiddy and the Strickers (collectively, Defendants) in Superior Court in Johnston County, North Carolina, where Plaintiffs reside. The Complaint alleged claims of negligence, wrongful death, negligent infliction of emotional distress, and punitive damages. Defendants both filed responsive pleadings generally denying liability in the form of Motions, Answers, and Third-Party Complaints. The Third-Party Complaints joined May as Third-Party Defendant alleging the Plaintiffs' Complaint falls within the Indemnification and Hold Harmless provision of the Vacation Rental Agreement.

In their responsive pleadings, Defendants both included Motions to Change Venue. The Motions alleged the terms of the Vacation Rental Agreement included a mandatory forum-selection clause requiring this action be brought by Plaintiffs in

Dare County, North Carolina.  Defendants' Motions were heard on 28 October 2021 in Johnston County Superior Court.  Defendants contended Plaintiffs should be bound by the Vacation Rental Agreement—specifically, the provision requiring "Any action relating to this Agreement shall be instituted and prosecuted only in the Dare County Superior Court, North Carolina"—as third-party beneficiaries to the Vacation Rental Agreement or by the doctrine of equitable estoppel.  Defendants further contended the language of the Vacation Rental Agreement is broad enough to cover Plaintiffs' claims for negligence, wrongful death, negligent infliction of emotional distress, and punitive damages.

On 15 December 2021, the trial court entered its Order Denying Defendants' Motions to Change Venue.  In its Order, the trial court included Findings of Fact:

> 14.  Thomas Jarman did not sign the Vacation Rental Agreement.
>
> 15.  Jessica Vaughn did not sign the Vacation Rental Agreement.
>
> 16.  No evidence has been presented that Thomas Jarman ever read, or was aware, of the terms of the Vacation Rental Agreement.
>
> 17.  No evidence was presented that Jessica Vaughn ever read, or was aware, of the terms of the Vacation Rental Agreement.
>
> 18.  Plaintiffs were not parties to the Vacation Rental Agreement.
>
> 19.  The signatories to the Vacation Rental Agreement did not intend to confer a direct benefit on Plaintiffs, and there was never a meeting of the minds that the plaintiffs would become parties or third[-]party beneficiaries to the contract.

20.   Plaintiffs were not actively nor directly involved in the formation of the Vacation Rental Agreement.

21.   Plaintiff[s'] causes of action are only based upon duties imposed on Defendants by North Carolina common law and North Carolina statutory law.

22.   Plaintiffs' causes of action do not arise out of or relate to the Vacation Rental Agreement.

23.   The Plaintiffs are not seeking the benefit of the Vacation Rental Agreement.  Plaintiffs' causes of action exist separate and apart from the Vacation Rental Agreement entered into between Defendant Twiddy and Third-Party Defendant . . . May, and do not arise out of or relate to the Vacation Rental Agreement.

24.   The Court distinctly makes no findings of fact regarding whether the forum-selection clause of the Vacation Rental Agreement should, or should not, be enforced against  . . . May. That issue is not presently before this Court.

The trial court then concluded: Plaintiffs were not third-party beneficiaries of the Vacation Rental Agreement; Plaintiffs were not equitably estopped from denying the applicability of the forum-selection clause; and Plaintiffs' causes of action did not arise out of or relate to the Vacation Rental Agreement.  Finally, the trial court concluded Johnston County was a proper venue for this action pursuant to N.C. Gen. Stat. § 1-82.  Twiddy timely filed written Notice of Appeal from the Order Denying Defendants' Motions to Change Venue on 10 January 2022.[3]

## **Appellate Jurisdiction**

---

[3] The Strickers did not separately appeal.  Neither the Strickers nor May have made any appearance in this Court.

The trial court's Order Denying Defendants' Motions to Change Venue is an interlocutory order. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *McClennahan v. N.C. School of the Arts*, 177 N.C. App. 806, 807-08, 630 S.E.2d 197, 199 (2006) (citation and quotation marks omitted). "Generally, a party has no right to appeal an interlocutory order." *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 775, 501 S.E.2d 353, 354 (1998) (citing *N.C. Dep't of Transportation v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995)). "However, 'an appeal is permitted . . . if the trial court's decision deprives the appellant of a substantial right [that] would be lost absent immediate review.'" *Id.* (citing *Page,* 119 N.C. App at 734, 460 S.E.2d at 334). "'[A]n immediate appeal is permitted where an erroneous order denying a party the right to have the case heard in the proper court would work an injury to the aggrieved party [that] would not be corrected if no appeal was allowed before the final judgment.'" *Id.* at 775-76, 501 S.E.2d 354-55 (quoting *Perkins v. CCH Computax, Inc.*, 106 N.C. App. 210, 212, 415 S.E.2d 755, 757, *reviewed on other grounds*, 332 N.C. 149, 419 S.E.2d 574, *decision reversed*, 333 N.C. 140, 423 S.E.2d 780 (1992)).

This Court has recognized an order denying a motion based on improper venue, which asserts venue is proper elsewhere, affects a substantial right because it "'would work an injury to the aggrieved party which could not be corrected if no appeal was allowed before the final judgment.'" *Thompson v. Norfolk S. Ry. Co.*, 140

N.C. App. 115, 121-22, 535 S.E.2d 397, 401 (2000) (quoting *DesMarais v. Dimmette*, 70 N.C. App. 134, 136, 318 S.E.2d 887, 889 (1984)). Likewise, orders addressing the validity of a forum-selection clause also affect a substantial right. *US Chem. Storage, LLC v. Berto Constr., Inc.*, 253 N.C. App. 378, 381, 800 S.E.2d 716, 719 (2017). Thus, Twiddy's appeal from the trial court's denial of Defendants' Motions to Change Venue is properly before us as the trial court's Order denying Defendants' Motions affects a substantial right.

## Issues

The key issues on appeal are whether, on the facts of this case, Plaintiffs—as non-signatories to the Vacation Rental Agreement—may be bound by the forum-selection clause contained in the Vacation Rental Agreement as (I) third-party beneficiaries or (II) by equitable estoppel.

## Analysis

As a preliminary matter, the parties disagree on the standard of review we should apply to the trial court's Order in this case. Twiddy contends we should employ a de novo review. Plaintiffs assert our review is limited to whether the trial court abused its discretion in denying the change of venue.

"Generally, a trial court's denial of a motion to change venue 'will not be disturbed absent a showing of a manifest abuse of discretion.' " *LendingTree, LLC v. Anderson*, 228 N.C. App. 403, 407, 747 S.E.2d 292, 296 (2013) (quoting *Carolina Forest Ass'n, Inc. v. White*, 198 N.C. App. 1, 10, 678 S.E.2d 725, 732 (2009) (citation

and quotation marks omitted)). Likewise, as a general proposition, "[w]e employ the abuse-of-discretion standard to review a trial court's decision concerning clauses on venue selection." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002) (citation omitted). In particular, we apply an abuse of discretion standard when the trial court issues an order regarding the enforceability of a venue-selection clause under a Rule 12(b)(3) motion. *See Wall v. Automoney, Inc.*, 284 N.C. App. 514, 529, 877 S.E.2d 37, 51 (2022), *rev. denied* ___ N.C. ___, 884 S.E.2d 739 (2023); *see also SED Holdings, LLC v. 3 Star Props., LLC*, 246 N.C. App. 632, 636, 784 S.E.2d 627, 630 (2016); *Davis v. Hall*, 223 N.C. App. 109, 110, 733 S.E.2d 878, 880 (2012); *Cable Tel. Servs., Inc. v. Overland Contr'g., Inc.*, 154 N.C. App. 639, 645, 574 S.E.2d 31, 35 (2002); *Mark Grp. Int'l, Inc.*, 151 N.C. App. at 568, 566 S.E.2d at 162; *Appliance Sales & Serv., Inc. v. Command Elecs. Corp.*, 115 N.C. App. 14, 21, 443 S.E.2d 784, 789 (1994). We apply the abuse of discretion standard in these cases because the disposition of these cases is "highly fact-specific." *Cox,* 129 N.C. App. at 776, 501 S.E.2d at 355 (citation omitted). On the other hand, when a trial court is called upon to *interpret* a forum- or venue-selection clause as a matter of law, we review the trial court's decision de novo. *US Chem. Storage, LLC*, 253 N.C. App. at 382, 800 S.E.2d at 720.

In this case, we broadly apply an abuse of discretion standard to the trial court's Order because the central determination made by the trial court was whether to enforce the forum-selection clause in the Vacation Rental Agreement between

Twiddy and May as against Plaintiffs.[4]   However, the trial court's decision not to enforce the forum-selection clause stemmed from its legal conclusions Plaintiffs were not third-party beneficiaries or estopped from denying the applicability of the forum-selection clause.[5]  "[T]he trial court's articulation and application of the relevant legal standard is a legal question that is reviewed de novo."  *Miller v. Carolina Coast Emergency Physicians, LLC*, 382 N.C. 91, 104, 876 S.E.2d 436, 447 (2022) (citation omitted).  "And, whatever the standard of review, 'an error of law is an abuse of discretion.' "  *Id.* (quoting *Da Silva v. WakeMed*, 375 N.C. 1, 5 n.2, 846 S.E.2d 634, 638 (2020)); *cf. LendingTree, LLC* , 228 N.C. App. at 407, 747 S.E.2d at 296 ("Therefore, although we apply abuse of discretion review to general venue decisions, we apply *de novo* review to waiver arguments." (citation omitted)).

I.   Third-Party Beneficiaries

On appeal, Twiddy first contends the trial court erred by failing to apply the third-party beneficiary doctrine to bind Plaintiffs to the forum-selection clause.  The

---

[4] Indeed, the parties agree the forum-selection clause itself is properly interpreted as mandatory and not permissive.  The parties do, however, disagree as to whether—if the forum-selection clause was deemed enforceable as to Plaintiffs—Plaintiffs' claims in this case would otherwise fall within the scope of the forum-selection clause's language.

[5] The trial court included these determinations as both findings of fact and conclusions of law.  We view the trial court's application of the third-party beneficiary and equitable estoppel doctrines to be in the nature of conclusions of law.  *See Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 412, 720 S.E.2d 785, 792 (2011) ("Generally, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." (citation and quotation marks omitted)).

third-party beneficiary doctrine usually applies to allow a third-party to enforce a contract executed for their direct benefit. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 650, 407 S.E.2d 178, 181 (1991). A party "is a third-party beneficiary if she can show (1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the plaintiff." *Holshouser v. Shaner Hotel Grp. Properties One Ltd. P'ship*, 134 N.C. App. 391, 399-400, 518 S.E.2d 17, 25 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000). Here, however, Twiddy contends that the Vacation Rental Agreement—existing between Twiddy and May and as otherwise generally enforceable—was executed for the direct benefit of Plaintiffs, and, thus, Plaintiffs—as third-party beneficiaries—should be bound by its provisions.

In support of its position, Twiddy relies in large part on our decision in *LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 548 S.E.2d 574 (2001). There, this Court affirmed a trial court's decision enforcing an arbitration clause in an agreement against a third-party to the agreement. *Id*. at 543, 548 S.E.2d 575. In that case, the plaintiff was a banking institution and the defendant was a former employee of the plaintiff. Under then-existing law, the plaintiff was not permitted to become a member of the National Association of Securities Dealers, Inc. (NASD) and, consequently, could not engage in the business of securities transactions unless it partnered with a NASD member. *Id*. The plaintiff partnered with a registered

brokerage and the defendant served as a "dual employee" of the plaintiff and the securities brokerage. *Id.* at 543, 584 S.E.2d at 576. This allowed the defendant to serve as a broker under the supervision and control of the plaintiff. *Id.* The plaintiff was then permitted to share in the profits derived from the defendant's securities brokerage work. *Id.* In order to perform the securities brokerage work, the defendant was required to apply and register with NASD using a U-4 form. *Id.* at 543-44, 584 S.E.2d at 576. The U-4 registration form with NASD included an arbitration clause. *Id.* at 544, 584 S.E.2d at 576. The defendant voluntarily terminated her employment with the plaintiff and joined another brokerage. *Id.* The plaintiff sued the defendant alleging, among other things, a breach of a separate non-compete. *Id.* The defendant moved to compel arbitration against the plaintiff even though the plaintiff was not (and could not) be a party to the U-4 registration with NASD. *Id.*

Our Court explained the direct benefit the plaintiff received from the U-4: "plaintiff required defendant to sign the U-4 Form so that plaintiff would be in a lawful position to benefit from the business of securities transactions." *Id.* at 549, 548 S.E.2d at 579. As such, the plaintiff was an intended beneficiary of the U-4 registration and, therefore, deemed to be in privity of contract as a third-party beneficiary. *Id.* at 548, 548 S.E.2d 578-79. As a result, we held the plaintiff could be compelled to arbitrate its claims against the defendant.[6]

---

[6] Our decision in that case also found grounding in equitable estoppel and principles of agency.

Indeed, the benefit the plaintiff received in *LSB Fin. Servs.* is illustrative of the type of benefit our Courts have required to show a direct—rather than incidental—benefit for purposes of invoking the third-party beneficiary doctrine. " 'A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person.' " *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 336, 641 S.E.2d 721, 723 (2007) (quoting *Holshouser*, 134 N.C. App. at 400, 518 S.E.2d at 25). " 'It is not enough that the contract, in fact, benefits the [third-party], if, when the contract was made, the contracting parties did not intend it to benefit the [third-party] directly.' " *Id.* " 'As a general proposition, the determining factor as to the rights of a third[-]party beneficiary is the intention of the parties who actually made the contract.' " *Vogel v. Reed Supply Co.,* 277 N.C. 119, 128, 177 S.E.2d 273, 279 (1970) (quoting 17 Am.Jur.2d, Contracts § 304). " 'The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts.' " *Id.* "The Court, in determining the parties' intentions, should consider circumstances surrounding the transaction as well as the actual language of the contract." *Raritan River Steel Co.*, 329 N.C. at 652, 407 S.E.2d at 182.

In *LSB Fin. Servs.*, the whole purpose of the U-4 registration form was to allow the plaintiff to legally engage in securities brokering. The plaintiff was not only aware of the U-4 form but required the defendant (plaintiff's employee) to register with NASD. Not only did the defendant's registration confer upon the plaintiff the

legal right to engage in securities brokering, but it also had the direct benefit of granting the plaintiff the right to be compensated for securities brokerage work, through the efforts of its employee.

In the case *sub judice*, unlike in *LSB Fin. Servs.*, the Vacation Rental Agreement between Twiddy and May was not intended to directly benefit Plaintiffs by vesting them with any legally enforceable right. Certainly, Plaintiffs, themselves, are not expressly designated as beneficiaries under the Vacation Rental Agreement. Moreover, as the trial court found, there was no evidence Plaintiffs ever read or were aware of the terms of the Vacation Rental Agreement. Further, there is no evidence Plaintiffs were active or involved in entering into the Vacation Rental Agreement. On the Record before us, there is no evidence of "the type of active and direct dealings which courts have required to confer third[-]party beneficiary status on a party not contemplated by the contract itself." *Hospira Inc. v. Alphagary Corp.*, 194 N.C. App. 695, 703, 671 S.E.2d 7, 13 (2009) (citation and quotation marks omitted).

Twiddy, nevertheless, contends the provisions of the Vacation Rental Agreement placed Plaintiffs in a class of persons intended to benefit from the contractual relationship between Twiddy and May. First, Twiddy points to the provisions restricting use of the vacation home to May and May's "family". Second, Twiddy relies on provisions of the indemnification clause. These provisions, however, do not provide any direct benefit to Plaintiffs or evidence any intent to provide a direct benefit to Plaintiffs.

As an initial matter, by its very terms, the provision restricting use of the property does not purport to confer any benefit on May or any user of the property. The provision restricting use of the property provides:

> **4. Use and Tenant Duties.** The use of the Premises is restricted to use by You and Your family . . . . The term "family" as used herein means parents, grandparents, children and extended family members vacationing at the Premises.

It serves to expressly *restrict* May in whom she may invite to use the property during her tenancy. Further, the provision provides no legally enforceable right of access to the property by Plaintiffs (or other family members). *See Raritan River Steel Co.*, 329 N.C. at 652, 407 S.E.2d at 182. It merely grants May the ability to invite family members to use the property. As such, any benefit to Plaintiffs was purely incidental. Twiddy, nevertheless, contends—by virtue of this provision—Plaintiffs became lawful users of the property. To the contrary, however, this provision plainly supposes that in its absence, Plaintiffs (along with any number of others) could have been lawful users of the property. In any event, there is no evidence or showing this provision was intended to directly benefit Plaintiffs. Rather, the intent of this provision appears to be to provide uniformity in the types of users to whom Twiddy would rent the property on behalf of the Strickers. *See Revels*, 182 N.C. App. at 336-37, 641 S.E.2d at 724.

Likewise, the indemnity provision certainly itself provides no benefit to May or Plaintiffs. Rather, it is intended to attempt to cast a wide net over those from which Defendants might seek indemnification for damages. The provision provides:

> **17. Indemnification and Hold Harmless.** You agree to indemnify and save harmless the Owner and Agent for any liabilities . . . arising from or related to any claim or litigation which may arise out of or in connection with Your use and occupancy of the Premises including but not limited to any claim or liability. . . which is caused, made, incurred or sustained by You as a result of any cause, unless caused by the grossly negligent or willful act of Agent or the Owner, or the failure of Agent or the Owner to comply with the Vacation Rental Act. . . . The terms "Tenant," *"You," and "Your" as used in this Agreement shall include Tenant's heirs, successors, assigns, guests, invitees, representatives and other persons on the Premises during Your occupancy (without regard to whether such persons have authority under this Agreement to be upon the Premises)*, where the context requires or permits.

(emphasis added).

To be fair, Twiddy does not contend the indemnity provision itself provides any benefit to Plaintiffs. Instead, Twiddy asserts because the provision provides its definition of "You" and "Your" is "as used in this Agreement", then this definition should apply to the forum-selection clause which states: "You specifically consent to such jurisdiction and to extraterritorial service of process." As such, Twiddy argues Plaintiffs—as guests or invitees—should be bound as third-parties to the forum-selection clause. However, this argument ignores the fact the Vacation Rental Agreement expressly provides its provisions are severable and, indeed, May was

required to execute each provision individually. *See Wooten v. Walters*, 110 N.C. 251, 254-55, 14 S.E. 734, 735 (1892) ("A contract is entire, and not severable, when by its terms, nature and purpose, it contemplates and intends that each and all of its parts, material provisions, and the consideration, are common each to the other, and interdependent. . . . On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be.").

Moreover, Twiddy's argument that "You" and "Your" as defined by the indemnity provision should be read uniformly into and throughout the Vacation Rental Agreement is defeated by the fact it is plainly apparent in the terms of the agreement itself that Defendants themselves intended no such thing. By way of illustration, employing the expansive definitions of "You" and "Your" to the provision restricting use of the property "by You and Your family" yields ludicrous results permitting practically anyone to use the property during May's tenancy resulting in essentially no restriction whatsoever. It would mean the property would be restricted to use by May and her heirs, successors, assigns, guests, invitees, representatives, and other persons on the Premises during May's occupancy (without regard to whether such persons have authority under this Agreement to be upon the Premises) . . . and their families (including extended families). In other words, use would not be restricted to just May and her family members—it could include everyone from

non-family social guests and their families, delivery drivers and their families, and even complete strangers who would otherwise be trespassers and their families. This would functionally obliterate the provision restricting use of the property. We decline to interpret the Vacation Rental Agreement to reach such an absurd result. *See Atl. Disc. Corp. v. Mangel's of N.C., Inc.*, 2 N.C. App. 472, 478, 163 S.E.2d 295, 299 (1968) ("A construction of a contract leading to an absurd, harsh or unreasonable result should be avoided if possible." (citing 51C C.J.S. Landlord and Tenant § 232(4), p. 594)). As such, it could not have been the parties' intent that these definitions of "You" and "Your" be applied throughout the Vacation Rental Agreement as Twiddy contends.[7] In turn, then, this provision evinces no intent on the part of the parties to directly benefit Plaintiffs or bind them to the Vacation Rental Agreement, including specifically to the forum-selection clause as third-party beneficiaries.

In summary, there is no showing on this Record that Defendants and May intended to confer any legally enforceable right on Plaintiffs via the Vacation Rental Agreement. Instead, the Record here reflects any benefit incurred by Plaintiffs through the Vacation Rental Agreement was incidental and not direct. As such, Twiddy has failed to show Plaintiffs were third-party beneficiaries to the Vacation Rental Agreement. In turn, we conclude the trial court did not err by declining to

---

[7] We acknowledge the additional clause appended to the definition of "You" and "Your" in the indemnification provision which states: "where the context requires or permits." The parties make no argument as to how this clause operates in the context of the definition. It could modify "as used in this Agreement" or it could modify "other persons". It could have some other function entirely.

apply the third-party beneficiary doctrine to bind Plaintiffs to the forum-selection clause.

II.    Equitable Estoppel

Next, Twiddy contends the trial court also erred by failing to apply the doctrine of equitable estoppel to bind Plaintiffs to the forum-selection clause in the Vacation Rental Agreement. " 'Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity.' " *Ellen v. A.C. Schultes of Md., Inc.*, 172 N.C. App. 317, 321, 615 S.E.2d 729, 732 (2005) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (citation and quotation marks omitted)).

While Twiddy identifies no prior case where Courts have applied equitable estoppel to bind a party to a forum- or venue-selection clause, both parties again analogize this situation to cases involving arbitration clauses. In that context, we have recognized: " '[A] nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate.' " *Smith Jamison Constr. v. APAC-Atl., Inc.*, 257 N.C. App. 714, 717, 811 S.E.2d 635, 638 (2018) (quoting *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006)). " 'One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration

clause.' " *Id.* " 'In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.' " *Ellen*, 172 N.C. App. at 321, 615 S.E.2d at 732 (quoting *Schwabedissen*, 206 F.3d at 418). " 'To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.' " *Id.* For example, "In *Schwabedissen*, the Fourth Circuit Court of Appeals noted that '[a] nonsignatory is estopped from refusing to comply with an arbitration clause "when it [is seeking or] receives a 'direct benefit' from a contract containing an arbitration clause." ' " *Id.*; *see also LSB Fin. Servs.*, 144 N.C. App. at 548, 548 S.E.2d at 579.

"[W]here the issue is whether the underlying claims are such that the party asserting them should be estopped from denying the application of the arbitration clause, a court should examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 231, 721 S.E.2d 256, 263 (2012) (citation and quotation marks omitted). Even where a plaintiff's claims sound in tort and not contract, a plaintiff may not avoid arbitration where the claims at their root are an attempt to hold the opposing party to the terms of the contract. *See id.* at 232, 721 S.E.2d at

263. Nevertheless, where a party's claims "are dependent upon legal duties imposed by North Carolina statutory or common law rather than contract law," equitable estoppel does not operate to require enforcement of an arbitration clause against a non-signatory even where the contract "provides part of the factual foundation" for plaintiffs' complaint. *Ellen*, 172 N.C. App. at 322, 615 S.E.2d at 732-33; *see also Smith Jamison Constr.*, 257 N.C. App. at 720-21, 811 S.E.2d at 640 (applying *Ellen* to conclude "Although the existence of the Subcontract '[p]rovide[s] part of the factual foundation for [the] complaint,' [the] claims . . . are 'dependent upon legal duties imposed by North Carolina statutory or common law rather than contract law.' ").

Applying these analogous principles to this case, Plaintiffs' Complaint alleges no breach of duty owed to them by the Vacation Rental Agreement. The Complaint further makes no allegation the Vacation Rental Agreement conferred any direct benefit on them. Indeed, the Complaint includes no claim or allegation whatsoever arising out of the Vacation Rental Agreement itself.

To the contrary, the Complaint is grounded in claims for negligence and wrongful death dependent upon legal duties allegedly imposed on Defendants by North Carolina statutory or common law rather than contract law. *Ellen*, 172 N.C. App. at 322, 615 S.E.2d at 732. Twiddy contends, however, the provisions of the Vacation Rental Agreement operating to allow Plaintiffs to be permissive users of the property during May's tenancy and providing the Strickers "agree to provide the

premises to You in a fit and habitable condition" forms the basis for Plaintiffs' claims.[8] Plaintiffs' Complaint makes no such allegations. For example, there is no claim Plaintiffs are entitled to any refund of rent paid as a result of any breach of the duty under the Agreement. Moreover, even if the Vacation Rental Agreement—including listing May's family as permissive users of the property—"provides part of the factual foundation" for Plaintiffs' Complaint,[9] "[P]laintiffs' 'entire case' does not 'hinge[ ] on [any] asserted rights under the . . . contract.' " *Ellen*, 172 N.C. App. at 322, 615 S.E.2d at 732-33 (citation omitted). As such, we conclude the doctrine of equitable estoppel did not require the trial court, under these facts and allegations, to bind Plaintiffs to the forum-selection clause in the Vacation Rental Agreement. *See Smith Jamison Constr.*, 257 N.C. App. at 721, 811 S.E.2d at 640.

\* \* \* \*

Thus, as a matter of law, on the facts and allegations of this case, Plaintiffs—as non-signatories to the Vacation Rental Agreement—may not be bound by the forum-selection clause contained in the Vacation Rental Agreement as third-party beneficiaries or by equitable estoppel. Therefore, the trial court did not err by declining to enforce the forum-selection clause against Plaintiffs in this action.

---

[8] This agreement to provide the premises in fit and habitable condition really appears to be intended to provide Defendants with the opportunity to cure any defect or offer substitute performance prior to having to refund May's rental.

[9] It bears mentioning both sets of Defendants, in their Answers, admit upon information and belief the allegation Plaintiffs and their minor child were lawful visitors and/or tenants at the time of the incident. Thus, how and whether Plaintiffs were permissive users of the property at the time is not even really at issue in the case.

Consequently, the trial court did not abuse its discretion in denying the Motions to Transfer Venue.[10]

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's 15 December 2021 Order denying the Defendants' Motions to Change Venue is affirmed.

AFFIRMED.

Judges ZACHARY and GRIFFIN concur.

---

[10] We express no opinion as to whether—if Plaintiffs were bound by the Vacation Rental Agreement— Plaintiffs' claims would fall within the scope of the forum-selection clause. Like the trial court, we also express no opinion as to whether the forum-selection clause applies to Defendants' third-party claims against May. We also express no opinion as to whether Defendants may have waived application of the forum-selection clause by bringing their third-party indemnification action in Johnston County.