IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-761

Filed: 6 February 2018

Forsyth County, No. 16 CVS 2136

SMITH JAMISON CONSTRUCTION, Plaintiff,

v.

APAC-ATLANTIC, INC., YATES CONSTRUCTION CO., INC., Defendants.

Appeal by defendant from order entered 13 April 2017 by Judge Susan E. Bray in Forsyth County Superior Court. Heard in the Court of Appeals 8 January 2018.

*Spilman Thomas & Battle, PLLC, by Bryan G. Scott, Matthew W. Georgitis and Steven C. Hemric, for plaintiff-appellee.*

*Tuggle Duggins, P.A., by J. Nathan Duggins III, Alan B. Felts, Benjamin P. Hintze and Jaye E. Bingham-Hinch, for defendant-appellant.*

TYSON, Judge.

Yates Construction Company, Inc. ("Yates") appeals the superior court's order, which denied Yates' motion to compel Smith Jamison Construction to submit to binding arbitration and to stay all other proceedings in the dispute between these parties. We affirm the trial court's denial of Yates' motion asserting a right to demand arbitration.

I. Background

Smith Jamison Construction ("Jamison") is a concrete contractor based in Winston-Salem, North Carolina. In October 2012, Jamison entered into a contract (the "Subcontract") with APAC-Atlantic, Inc. ("APAC"), a general contractor, to construct catch basins, drop inlets, concrete curbs, gutters, sidewalks, curb ramps, driveways, and concrete paved ditches along the Interstate 73 highway corridor.

Contained within section 22 of the Subcontract was a mandatory arbitration provision in which Jamison and APAC agreed to arbitrate claims arising out of or relating to the Subcontract as follows:

> All claims or controversies arising out of or related to this Subcontract shall be submitted to and resolved by binding arbitration by a single arbitrator in any County and State where the project is located. The American Arbitration Association ("AAA") shall conduct the arbitration unless the parties mutually agree to use an alternative arbitration service. Judgment upon any award made by the arbitrator may be entered in any court having jurisdiction thereof, if necessary.

Yates is a separate North Carolina corporation, which has engaged in construction work with APAC and Jamison on past projects. Yates is neither a party to nor a signatory of the Subcontract between Jamison and APAC.

Jamison alleges, although it was awarded the Subcontract for the concrete work on Interstate 73, the APAC Project Manager exchanged emails with Yates' vice president on multiple times concerning a subcontract approval form, under which Jamison would further subcontract to Yates the curb work previously assigned to Jamison's scope of work under the Subcontract. Jamison further alleges it did not

- 2 -

request nor authorize Yates to be added to the project as a sub-subcontractor, but that, "Yates was expecting to perform [Jamison's] work as early as July 2013, due to such representations from APAC." Jamison further alleges APAC expressly requested Jamison to allow Yates to subcontract the curb and gutter scope of work, but Jamison refused. Jamison asserts that after it refused, APAC started sending it daily complaint emails. On 20 December 2013, the Department of Transportation approved APAC's request to terminate Jamison and replace them with Yates. Jamison was informed that the Subcontract had been terminated.

Jamison filed a complaint against APAC and Yates on 13 April 2016, alleging that APAC had terminated Jamison and replaced it with Yates. Jamison also asserted claims against Yates for: (1) fraudulent misrepresentation; (2) tortious interference with a contract; (3) civil conspiracy; and (4) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

Yates filed an answer on 14 June 2016, denied all allegations of wrongdoing and asserted, in part, "the presence of a mandatory and binding arbitration clause in the subcontract between [Jamison] and Defendant APAC[.]"

The trial court entered a consent order compelling arbitration between Jamison and APAC and staying the claims against APAC on 30 December 2016. In the consent order, Jamison and APAC agreed to stay the action with respect to their

claims and to submit those claims to binding arbitration, based upon the arbitration provision contained in the Subcontract between Jamison and APAC.

Yates filed a motion to compel arbitration and stay court proceedings on 24 March 2017. Yates sought the court to order Jamison to arbitrate its claims against it. The trial court denied Yates' motions by an order entered 13 April 2017. Yates filed timely notice of appeal.

## II. Jurisdiction

Although an order denying a party's motion to compel arbitration is interlocutory, this Court has repeatedly held that "[it] is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (citing *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52, 302 S.E.2d 293 (1983)); N.C. Gen. Stat. §§ 1-277(a), 7A-27(d)(1) (2017). Yates' interlocutory appeal is properly before us.

## III. Standard of Review

"[The] trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court." *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001). "Under *de novo* review, [this Court] consider[s] the matter anew and [is] free to substitute [its] judgment for that of the trial court." *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012).

IV. Analysis

Yates argues the trial court erred in denying its motion to compel arbitration and stay the action. Yates asserts Jamison is equitably estopped from asserting Yates, a nonsignatory, was not covered by the arbitration clause contained within the Subcontract between Jamison and APAC.

A. Duty to Arbitrate

This Court applies a two-pronged analysis to determine whether a dispute is subject to arbitration. *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 478, 583 S.E.2d 325, 330 (2003), *aff'd per curiam*, 358 N.C. 146, 593 S.E.2d 583 (2004). We must determine whether the specific dispute is covered by the "substantive scope of th[e] agreement[,]" and "whether the parties had a valid agreement to arbitrate[.]" *Id*. (citation omitted).

In the consent order compelling arbitration between Jamison and APAC, both parties to the Subcontract stipulated that the arbitration clause was valid, enforceable, and governed at least some of Jamison's claims against APAC. Because the applicability of the arbitration clause in the Subcontract is stipulated to cover the claims between Jamison and APAC, we must determine whether the arbitration clause also obligates Jamison to arbitrate its claims against Yates.

"The obligation and entitlement to arbitrate 'does not attach only to one who has personally signed the written arbitration provision.' Rather, '[w]ell-established

- 5 -

common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.'" *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) (quoting *Int'l. Paper v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 416-17 (4th Cir. 2000)) (alteration in original).

### B. Equitable Estoppel

"[A] nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). "One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." *Id.* "[E]stoppel is appropriate if in substance the signatory's underlying complaint is based on the nonsignatory's alleged breach of the obligations and duties assigned to it in the agreement." *Id.* at 628 (citation, internal quotation marks and brackets omitted).

"[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely upon the terms of the . . . agreement in asserting its claims against the nonsignatory." *Id.* at 626-27 (citations omitted). We examine Jamison's underlying claims in the complaint to determine whether equitable estoppel should apply. *See id.*

> Where the issue is whether the underlying claims are such that the party asserting them should be estopped from denying the application of the arbitration clause, a court should examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, *assert a breach of a duty created by the contract containing the arbitration clause.*

*Carter v. TD Ameritrade Holding Corp.,* 218 N.C. App. 222, 231, 721 S.E.2d 256, 263 (2012) (emphasis supplied) (internal quotation marks and citation omitted).

### C. *Ellen v. A.C. Schultes of Maryland, Inc.*

In analyzing Yates' equitable estoppel argument, we find this Court's analysis in *Ellen v. A.C. Schultes of Maryland, Inc.*, 172 N.C. App. 317, 320, 615 S.E.2d 729, 732 (2005), is instructive. This Court in *Ellen* affirmed the trial court's denial of a motion to compel arbitration, which was based upon the defendants' contention that the plaintiffs were equitably estopped from refusing to arbitrate their claims. *Id.* at 320-23, 615 S.E.2d at 731-33.

As is analogous here, the plaintiffs in *Ellen* had brought claims for unfair and deceptive trade practices and tortious interference with prospective business advantages against the defendants. *Id.* at 322, 615 S.E.2d at 733. The plaintiffs had not asserted the defendants in *Ellen* breached or owed them any duties arising from the contract containing the arbitration clause. *Id.*

In affirming the denial of the motion to compel arbitration, this Court reasoned that while the contract containing the arbitration clause "[p]rovided part of the

factual foundation for plaintiffs' complaint," the plaintiffs' claims were "dependent upon legal duties imposed by North Carolina statutory or common law rather than contract law." *Id.* at 322, 615 S.E.2d at 732-33.

Here, Jamison's claims against Yates consist of: (1) fraudulent misrepresentation; (2) tortious interference with a contract; (3) civil conspiracy; and (4) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. Jamison's claims, like the plaintiffs' claims in *Ellen*, are dependent upon legal duties imposed by North Carolina statutory and common law, rather than alleged breaches of duties arising from the terms of the Jamison and APAC Subcontract. *See id.*

Jamison's fraudulent misrepresentation claim arises from a common law duty not to intentionally harm others through deception. *See Marshall v. Keaveny*, 38 N.C. App. 644, 647, 248 S.E.2d 750, 753 (1978) (recognizing "that an action for fraudulent misrepresentations inducing the plaintiff to enter into a contract is an action in tort and not an action in contract").

Jamison's civil conspiracy claim is premised upon allegations that Yates conspired with APAC to defraud Jamison and is not a separate cause of action, in and of itself. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (noting "that there is not a separate civil action for civil conspiracy in North Carolina").

Jamison's tortious interference with a contract claim arises from a common law duty of a third party not to interfere with another's right to freedom of contract

or to enjoy the benefits thereof. *See Coleman v. Whisnant,* 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945) ("[U]nlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant's own rights, but with design to injure the plaintiff, or gaining some advantage at his expense."); *see also*, *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 189-90, 437 S.E.2d 374, 378-79 (1993) (labelling tortious interference with a contract as a common law claim).

Jamison asserts its unfair and deceptive trade practices claim against Yates pursuant to N.C. Gen. Stat. § 75-1.1, which establishes a statutory, and not contractual, basis for the action. *See Ellen*, 172 N.C. App at 322, 615 S.E.2d at 732 (treating an unfair and deceptive trade practices claim as a statutory-based claim); *see also United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 320, 339 S.E.2d 90, 93 (1986) ("[A]n action for unfair and deceptive trade practices is a distinct action separate from fraud, breach of contract, and breach of warranty.").

Jamison's claims against Yates are not premised upon any alleged breaches of duties created by the Jamison and APAC Subcontract, but rather upon alleged breaches of duties established by North Carolina common law or statutes. *See Carter*, 218 N.C. App. 222, 231, 721 S.E.2d 256, 263 ("[A] court should examine whether the

plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause.").

Yates asserts the case of *Carter v. TD Ameritrade Holding Corp.* is indistinguishable from the matter at bar. In *Carter,* the plaintiffs were investors who alleged their IRA investment accounts were transferred without their assent to the defendants via contracts bearing their allegedly forged signatures. *Carter,* 218 N.C. App. at 223-24, 721 S.E.2d at 258-59. This Court held, *inter alia,* the plaintiffs had ratified the contracts by manifesting their approval of the transfer by accepting tax benefits and administrative services provided by the defendants under their investment contracts, and by failing to repudiate their accounts after they became aware of the transfer. *Id.* at 230, 721 S.E.2d at 262.

The contracts contained binding arbitration clauses, which named the defendants' predecessor-in-interest. *Id.* at 224, 721 S.E.2d at 259. This Court presumed, *arguendo,* the plaintiffs had not signed the investment contracts, and held the plaintiffs were estopped from arguing they were not subject to arbitration against the defendants, because the plaintiffs' claims were premised on enforcing duties arising from the contracts. *Id.* at 230-33, 721 S.E.2d at 262-63. The claims brought by the plaintiffs included, *inter alia*:

> [B]reach of contract, alleging defendants breached their
> respective investment contracts with the plaintiffs; breach
> of fiduciary duty, alleging [] defendants were plaintiffs'
> broker-dealers with whom plaintiffs had a special

> relationship of trust who, by [t]he above-described conduct, breached their fiduciary duties; gross negligence, alleging [] defendants had a duty to properly supervise [plaintiff's investment representative] and that [t]he failure of these defendants to properly supervise [plaintiff's investment representative] constitutes gross negligence.

*Id.* at 233, 721 S.E.2d at 264 (internal quotation marks omitted).

The plaintiffs in *Carter* were attempting to assert the contracts containing arbitration clauses and naming the defendants' predecessor-in-interest were not binding upon them, because their signatures were allegedly forged, while at the same time asserting the defendants had breached the duties established by those same contracts. *Id.*

Here, unlike *Carter,* Jamison is not attempting to assert claims against Yates that are premised upon any contractual and fiduciary duties created by the contract containing the arbitration clause. The Subcontract between Jamison and APAC does not contemplate, name, or refer to Yates as a party to the agreement or in any other manner. We reject Yates' assertion that *Carter* is indistinguishable from the case at hand or compels a reversal of the trial court's order.

Although the existence of the Subcontract between Jamison and APAC "[p]rovide[s] part of the factual foundation for [Jamison's] complaint," Jamison's claims against Yates are "dependent upon legal duties imposed by North Carolina statutory or common law rather than contract law." *Ellen,* 172 N.C. at 320, 615 S.E.2d at 732. We conclude that the doctrine of equitable estoppel does not require the

Court, under these facts and allegations, to compel Jamison to arbitrate its asserted claims against Yates. *See id.* Yates' arguments are overruled.

## V. Conclusion

Jamison's claims against Yates are premised upon duties created by North Carolina common law or statutes, and are not based upon the Subcontract duties or provisions between Jamison and APAC. Equitable estoppel does not apply to these claims to require the trial court to stay the action and compel Jamison to submit its claims against Yates to arbitration. The order denying Yates' motion to compel arbitration and to stay the action is affirmed. *It is so ordered.*

AFFIRMED.

Chief Judge McGEE and Judge DAVIS concur.