IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-710

Filed 2 April 2024

Gaston County, No. 21 CVS 4249

JOHN GRIFFING, Plaintiff,

v.

GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A., Defendant/Counterclaimant,

v.

JOHN GRIFFING, Counterclaim Defendant.

Appeal by defendant/counterclaimant from order entered 30 May 2023 by Judge Reginald E. McKnight in Gaston County Superior Court. Heard in the Court of Appeals 9 January 2024.

> *Pangia Law Group, by Amanda C. Dure, and Joseph L. Anderson, for plaintiff-appellee.*
>
> *Bell, Davis & Pitt, P.A., by Edward B. Davis and Kevin J. Roak, for defendant-appellant.*

ZACHARY, Judge.

This case returns to this Court upon the trial court's entry of a revised order following our vacatur and remand in *Griffing v. Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.* ("*Griffing I*"), 287 N.C. App. 694, 883 S.E.2d 129, 2023 WL 2127574 (2023) (unpublished). Defendant Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

("Gray Layton"), a North Carolina law firm, appeals the trial court's order denying Gray Layton's motion to compel arbitration. After careful review, we affirm.

## I.    Background

This appeal concerns a series of four agreements between Gray Layton, Plaintiff John Griffing, and various third parties. The central issue before us is whether Plaintiff's claims against Gray Layton are subject to arbitration under the provisions of these agreements.

The first agreement ("the Shareholder Agreement") is between Plaintiff and Gray Layton. Plaintiff signed the Shareholder Agreement when he "joined Gray Layton as a shareholder on or about 6 March 2000." *Griffing I*, at *1. "The [S]hareholder [A]greement d[oes] not contain an arbitration clause." *Id*.

The second agreement ("the COBRA Properties Agreement") is between Plaintiff; COBRA Properties, L.L.P. ("COBRA Properties"); and its existing members. This agreement arose in conjunction with Gray Layton's offer to Plaintiff to join the firm:

> Together with its offer to join the firm, Gray Layton offered Plaintiff the option to buy into COBRA Properties, . . . the entity from which Gray Layton leased office space. On or about 20 April 2001, Plaintiff bought into COBRA Properties, and in August 2018, he purchased an additional interest in the partnership.

*Id*. Under the terms of the COBRA Properties Agreement, the members of COBRA Properties receive prorated shares of the net profits, including rental income. The

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

COBRA Properties Agreement contains an arbitration clause; it provides that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled, if allowed by law, by arbitration[.]" By entering into the COBRA Properties Agreement, Plaintiff "agree[d] to be bound . . . as if he were an original signatory."

The third agreement ("the COBRA Lease") is the rental agreement pursuant to which Gray Layton leased office space from COBRA Properties. *Id.* Under the COBRA Lease, Gray Layton's office rent was scheduled to increase by three percent annually. *Id.* The COBRA Lease does not contain an arbitration clause. *Id.*

The fourth agreement ("the Class Action Agreement") is an intrafirm agreement between Gray Layton and two of its associate attorneys. Plaintiff signed the Class Action Agreement not as an individual party, but rather as a "participating attorney" within the terms of the contract:

> In 2012, the shareholders of Gray Layton "decided to accept a large class action case on a contingent fee basis." The Gray Layton shareholders entered into an agreement with two associates regarding the class action lawsuit, pursuant to which "[t]he individual shareholders in [Gray Layton] agreed to pay the expenses and overhead for the class action litigation." In addition, the associates agreed to "devote a substantial amount of time and attention" to the lawsuit in exchange for each receiving ten percent of the gross attorney's fees. Seventy percent of the gross fees were to be "divided in shares among the undersigned 'Participating Attorneys' "; Plaintiff signed the agreement as one such "participating attorney."

*Id.* (alterations in original). The Class Action Agreement contains an arbitration

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

clause, which provides that "the parties agree to submit their dispute(s) to binding arbitration to be conducted in Gastonia, NC." *Id.*

As we detailed in *Griffing I*, the present case began once Plaintiff left Gray Layton:

> On 31 October 2019, Plaintiff left Gray Layton as a result of the financial burden of "carrying his overhead for his profit center" and "paying for firm overhead to the other shareholders." On 25 October 2021, Plaintiff filed a complaint in Gaston County Superior Court against Gray Layton, alleging breach of contract and failure to provide Plaintiff with a shareholder accounting or to allow Plaintiff to inspect Gray Layton's books and records.
>
> Concerning the breach of contract claim, Plaintiff asserted that Gray Layton "violated the shareholder agreements as well as other side agreements" by failing to: (1) buy back his stock in Gray Layton within sixty days of his departure from the firm; (2) buy back his stock "at the agreed upon price"; (3) "adequately compensate Plaintiff for the revenue stream he brought into the firm"; (4) "properly allocate overhead against the cost centers that used the services provided by the entire firm"; (5) pay the COBRA Properties partners "the 3% rent increases as required by the lease" between Gray Layton and COBRA Properties; and (6) reimburse Plaintiff for the expenses that he advanced for the class action lawsuit. Plaintiff attached to his complaint copies of the [Shareholder Agreement], the [COBRA Properties Agreement], the [COBRA Lease], and the [Class Action Agreement].

*Id.* (cleaned up).

Gray Layton filed an answer in which it generally denied Plaintiff's allegations, advanced several affirmative defenses, and asserted counterclaims for breach of contract and conversion. *Id.* at *2. Gray Layton also filed a motion to compel

GRIFFING v. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

arbitration, *id.*, which included a motion to stay all proceedings pending arbitration. By order entered on 24 February 2022, the trial court denied Gray Layton's motion with prejudice, concluding that "this matter is not subject to arbitration[.]"

Following Gray Layton's appeal, this Court vacated and remanded the matter to the trial court because the "order contain[ed] no findings of fact evincing the rationale underlying the trial court's decision to deny Gray Layton's motion." *Id.* at *3 (cleaned up). As we explained:

> Plaintiff attached four agreements to his complaint, and he alleged with regard to the breach of contract claim that "Gray Layton has violated the [Shareholder Agreement] *as well as other side agreements*." Two of the four referenced agreements contained mandatory arbitration clauses. However, the court neglected to state which, if either, of the two it considered to be valid agreements to arbitrate between these parties or whether the disputes raised in this action fall within the scope of any such valid agreement.

*Id.* (cleaned up).

Post-remand, on 30 May 2023, the trial court entered a revised order containing additional findings of fact. The trial court found:

> 1. . . . Gray Layton moved to compel arbitration in the claim filed by Plaintiff . . . arising out of [Plaintiff]'s breach of contract action against Gray Layton seeking damages owed to [Plaintiff] as a result of expenses and overhead expended pursuant to the Shareholder Agreement between Gray [Layton] and [Plaintiff]. See Exhibit A, [the] Shareholder Agreement.
>
> 2. The basis of the breach of contract action arises out of the Shareholder Agreement entered into between Gray

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

Layton and [Plaintiff] on March 6, 2000.

3. [Plaintiff] further alleged failures of Gray Layton to adequately compensate him for the revenue he brought into the firm; the failure to purchase [Plaintiff]'s stock in Gray Layton at the agreed upon price or time; the failure of Gray Layton to pay [COBRA] Properties, LLP partners rent increases required by the lease; and the failure to adequately compensate [Plaintiff] for his interest in the class action matter.

4. There is no arbitration clause in the Shareholder Agreement.

5. The party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. *See Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 361, 526 S.E.2d 567, 575 (2019). Because the Shareholder Agreement between Gray Layton and [Plaintiff] lack[s] a binding arbitration agreement, it cannot serve as the basis to compel arbitration.

6. . . . Gray Layton also cited to three other agreements as grounds for its motion to compel arbitration: (1) the [COBRA Properties Agreement]; (2) the [COBRA Lease]; and (3) the Class Action [Agreement].

7. The [COBRA Properties Agreement] is entered into between [COBRA] Properties, LL[P] and [Plaintiff], individually. The Court finds that Cobra Properties, LL[P] is an entirely separate entity from the parties in this matter and no privity exists between the parties, nor does this dispute fall within the scope of the arbitration agreement contained in the Partnership Agreement. The Cobra Properties Partnership Agreement cannot compel arbitration in this matter.

8. The [COBRA Lease] contains no arbitration clause. Without a mutual agreement to arbitrate, arbitration may not be compelled. The [COBRA] Lease cannot compel arbitration.

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

> 9. The [Class Action Agreement] is entered into between Gray Layton and its [associate attorneys]. The court finds that the [Class Action Agreement] contains an arbitration clause, but it does not apply between firm partners; instead, detailing how the firm divides fees with the [associate attorneys]. Moreover, [Plaintiff] was not an individual party to the [Class Action Agreement]. The present dispute between [Plaintiff] and Gray Layton does not fall within the scope of the arbitration agreement within the [Class Action Agreement] and is not grounds to compel arbitration in this matter. *See Ellis-Don Constr., Inc. v. HNTB Corp.*, 169 N.C. App. 630, 635, 610 S.E.2d 293, 296 (2005).

(Cleaned up).

Based on these findings of fact, the trial court again denied Gray Layton's motion to compel arbitration. Gray Layton timely filed notice of appeal.

## II.   Interlocutory Jurisdiction

As was the case in *Griffing I*, the trial court's order denying Gray Layton's motion to compel arbitration is interlocutory "because it does not determine all of the issues between the parties and directs some further proceeding preliminary to a final judgment." *Jackson v. Home Depot, U.S.A., Inc.*, 276 N.C. App. 349, 354, 857 S.E.2d 321, 326 (2021) (citation omitted). "Ordinarily, interlocutory orders are not immediately appealable. However, this Court has previously determined that an appeal from an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Id.* (cleaned up).

In the "Statement of the Grounds for Appellate Review" section of its opening

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

brief, Gray Layton has sufficiently demonstrated that the trial court's interlocutory order affects this substantial right. Additionally, Gray Layton correctly notes that the trial court's order is immediately appealable pursuant to N.C. Gen. Stat. § 1-569.28(a)(1) (2021) (providing an immediate right of appeal from "[a]n order denying a motion to compel arbitration"). Accordingly, this interlocutory order is properly before us.

### III.    Discussion

Gray Layton argues that the trial court erred by denying its motion to compel arbitration because this case "contains multiple valid arbitration clauses, and public policy favors arbitration." Specifically, Gray Layton argues that Plaintiff is bound to arbitrate his claims against Gray Layton by the arbitration clauses in the COBRA Properties Agreement and the Class Action Agreement. For the reasons that follow, we disagree.

### A. Standard of Review

"North Carolina has a strong public policy favoring the settlement of disputes by arbitration." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). "However, before a dispute can be settled in this manner, there must first exist a valid agreement to arbitrate. The party seeking arbitration bears the burden of proving the parties mutually agreed to the arbitration provision." *Jackson*, 276 N.C. App. at 356, 857 S.E.2d at 327 (cleaned up).

"The question of whether a dispute is subject to arbitration is an issue for

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

judicial determination. A trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, which this Court reviews de novo." *Id.* (cleaned up). "On appeal, findings of fact made by the trial court are binding upon the appellate court in the absence of a challenge to those findings." *Id.*

## B. Analysis

"The determination of whether a particular dispute is subject to arbitration involves a two-step analysis requiring the trial court to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Id.* (cleaned up). The first step of this analysis—whether the parties had a valid agreement to arbitrate— is the dispositive issue in this case.

It is undisputed that neither the Shareholder Agreement nor the COBRA Lease contains an arbitration clause. Accordingly, Gray Layton seeks to enforce against Plaintiff one of the arbitration clauses appearing in either the COBRA Properties Agreement or the Class Action Agreement. Gray Layton's arguments are unpersuasive.

### 1. The COBRA Properties Agreement

Gray Layton first argues that Plaintiff is bound to arbitrate his claims against Gray Layton by the arbitration clause in the COBRA Properties Agreement. In response, Plaintiff maintains that Gray Layton cannot enforce that arbitration clause against him because Gray Layton was not a party to that agreement. Gray Layton

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

does not dispute that fact, but argues instead that the trial court erred by failing to consider whether Plaintiff is equitably estopped from denying his burdens under the COBRA Properties Agreement—including its arbitration agreement.

"A nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Smith Jamison Constr. v. APAC-Atl., Inc.*, 257 N.C. App. 714, 717, 811 S.E.2d 635, 638 (2018) (cleaned up). "One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." *Id.* (citation omitted). "Estoppel is appropriate if in substance the signatory's underlying complaint is based on the nonsignatory's alleged breach of the obligations and duties assigned to it in the agreement." *Id.* (cleaned up).

Gray Layton focuses on Plaintiff's years of accepting the benefits of the COBRA Properties Agreement—namely, his share of the rent payments that Gray Layton has made to COBRA Properties. Yet in doing so, Gray Layton overlooks the essential question of whether Plaintiff "asserted claims in the underlying suit that, either literally or obliquely, *assert a breach of a duty created by the contract containing the arbitration clause." Id.* at 718, 811 S.E.2d at 638 (citation omitted). Here, Gray Layton's argument fails.

In his complaint, Plaintiff primarily alleges that Gray Layton violated the Shareholder Agreement "as well as other side agreements[.]" The only allegation that

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

plausibly concerns COBRA Properties is Plaintiff's assertion that Gray Layton "[f]ail[ed] to pay [the COBRA Properties] partners the 3% rent increases as required by the [COBRA L]ease." However, this is not an assertion of "a breach of a duty created by the contract containing the arbitration clause." *Id.* (emphasis omitted). The breach asserted is Gray Layton's alleged failure to pay the increased rent to COBRA Properties—a duty created by the COBRA Lease, which again, does not contain an arbitration provision—not Gray Layton's alleged failure to pay Plaintiff his share of rental income under the COBRA Properties Agreement. Neither does Plaintiff's complaint rely upon any alleged breach of duty created by the COBRA Properties Agreement.

Clearly, then, Plaintiff "is not attempting to assert claims against [Gray Layton] that are premised upon any contractual and fiduciary duties created by the contract containing the arbitration clause." *Id.* at 720, 811 S.E.2d at 640. Accordingly, Gray Layton fails to show that Plaintiff should be equitably estopped from denying that his breach of contract claim is subject to the COBRA Properties Agreement's arbitration clause.

In sum: Gray Layton was not a party to the COBRA Properties Agreement, and Plaintiff is not attempting to assert claims against Gray Layton that are premised upon any duty created by the COBRA Properties Agreement. Therefore, Gray Layton cannot enforce the COBRA Properties Agreement's arbitration clause against Plaintiff.

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

### 2. *The Class Action Agreement*

Gray Layton next argues that Plaintiff agreed to be bound as a signatory to the Class Action Agreement, which contains an arbitration clause. Gray Layton contends that the trial court "placed improper weight and stopped its analysis after finding that [Plaintiff] was not an 'individual party to the' Class Action Agreement." Unlike the COBRA Properties Agreement, it is undisputed that Gray Layton was a signatory to the Class Action Agreement.

Nonetheless, the plain text of the Class Action Agreement demonstrates that the parties to that intrafirm agreement were Gray Layton and the two associates who agreed to undertake the extensive class-action representation that was the subject of the contract. Moreover, the breach of contract alleged in Plaintiff's complaint that most closely falls within the ambit of the Class Action Agreement is the contention that Gray Layton "[f]ail[ed] to reimburse [Plaintiff] for the expenses he advanced in the class action matter." Although Plaintiff signed it as a participating attorney, the Class Action Agreement contains no provision that creates any right of reimbursement for a participating attorney's advanced expenses. It strains credulity to suggest that the arbitration provision contained in the agreement between Gray Layton and two of its associates regarding profit-sharing for the associates' class-action representation simultaneously manifests the agreement of one of Gray Layton's participating attorneys to arbitrate a claim that Gray Layton failed to reimburse him for advanced expenses.

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

Accordingly, as with the COBRA Properties Agreement, Plaintiff "is not attempting to assert claims against [Gray Layton] that are premised upon any contractual and fiduciary duties created by" the Class Action Agreement. *Id.* Plaintiff is therefore not bound, as a signatory to the Class Action Agreement, to arbitrate the claims he raises in the instant action, nor is he estopped from denying that he is bound by the arbitration clause in the Class Action Agreement.

In the alternative, Gray Layton argues that, as a third-party beneficiary to the Class Action Agreement, Plaintiff is bound to arbitrate the claims advanced in the case at bar.

"The third-party beneficiary doctrine usually applies to allow a third[ ]party to enforce a contract executed for [the third party's] direct benefit." *Jarman v. Twiddy & Co. of Duck, Inc.*, 289 N.C. App. 319, 326, 889 S.E.2d 488, 495 (2023). In order to assert rights under a contract as a third-party beneficiary, the third party "must show: (1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the third party." *Michael v. Huffman Oil Co., Inc.*, 190 N.C. App. 256, 269, 661 S.E.2d 1, 10 (2008) (cleaned up), *disc. review denied*, 363 N.C. 129, 673 S.E.2d 360 (2009). "When a party seeks enforcement of a contract as a third-party beneficiary, the contract must be construed strictly against the party seeking enforcement." *Id.*

Importantly, "our Courts have required [a third party] to show a direct—rather

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

than incidental—benefit for purposes of invoking the third-party beneficiary doctrine." *Jarman*, 289 N.C. App. at 327, 889 S.E.2d at 496. "A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person." *Id.* at 327–28, 889 S.E.2d at 496 (citation omitted). "[T]he determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Id.* at 328, 889 S.E.2d at 496 (cleaned up).

Here, as explained above, the direct beneficiaries of the Class Action Agreement are Gray Layton and the two associates with whom Gray Layton agreed to share profits. Further, despite Gray Layton's claim that Plaintiff "benefitted by sharing in any recovery stemming from the Class Action" Agreement, that benefit was not intended directly by the agreement between Gray Layton and its two associates. It is clear that Plaintiff cannot be considered a direct—rather than incidental—beneficiary of the Class Action Agreement.

Finally, the arbitration clause in the Class Action Agreement "do[es] not provide any direct benefit to Plaintiff[ ] or evidence any intent to provide a direct benefit to Plaintiff[.]" *Id.* at 328–29, 889 S.E.2d at 496. Construing the Class Action Agreement "strictly against the party seeking enforcement[,]" *Michael*, 190 N.C. App. at 269, 661 S.E.2d at 10 (cleaned up), we conclude that Gray Layton fails to show that Plaintiff is anything more than an incidental beneficiary. Plaintiff is therefore not

GRIFFING V. GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.

*Opinion of the Court*

bound by the Class Action Agreement's arbitration clause.

## IV.    Conclusion

For the foregoing reasons, the trial court's order is affirmed.

AFFIRMED.

Judges STROUD and TYSON concur.